May it please the Court, Opposing Counsel, Learned Justices. My name is Christopher Willis. I have the privilege of representing John Wiesehan in this matter. In the trial court's written findings regarding the denial of the motions for good faith finding, the trial court wrote that, and I'm quoting, the entirety of the facts and status of pleadings and orders in the instant case are heared for unseen in cited case law. And on that, I do not disagree with the trial court. However, it's the appellant's position that there are important guideposts in the case law and in the statutes at issue in this matter that the trial court missed and misinterpreted, leading to the key error in this case, namely the denial of the good faith finding motion sought by JLG and the plaintiff as to their settlement with each other. Now, on that issue, the court focused on the fact, and Johnstown has argued the same, of the idea that the plaintiff is doing indirectly that which the plaintiff is not permitted to do directly. And I believe that that is both a misinterpretation of what the applicable settlement achieved, and also a mischaracterization of what is and is not permitted under the Contribution Act. Now, as we've discussed, there's a number of cases cited in the brief. But I point to Block v. Pepper's construction, where the plaintiff took an assignment of a contribution claim against the plaintiff's own employer. The plaintiff was assigned from a settling defendant that defendant's right to sue the plaintiff's own employer, something that the plaintiff normally would not be able to do because of the workers' compensation bar. However, that was permitted under the Contribution Act, and is permitted under the Contribution Act. The trial court's interpretation of good faith under the contribution as creating a prohibition on something that the plaintiff is doing indirectly versus directly is not supported by the cases. And the trial court missed that important guidance. There's also the case of Whetstone v. Souter, again, where it was found, upon objection, that the plaintiff taking assignment of a contribution claim was not in bad faith, and was in good faith under the Contribution Act. Now, while not interpreting Illinois law, we cited two different cases from, the one was from New Jersey, where these issues were discussed at length. All of the arguments, I think, that were raised here and in the trial court were discussed about whether or not it is permissible in a contribution setting for a plaintiff to take an assigned claim for contribution, and to pursue that claim as an assignee. In those cases, in accord with Illinois law, found that that is permissible, because to hold otherwise would be to allow for the non-settling defendant to claim a windfall. That is exactly what Johnstown is arguing here for today. Johnstown, in their briefs, have argued that to permit the plaintiff to do, or the plaintiff attempted to do in the settlement, would permit a double recovery. How that double is counted is left unexplained, because Johnstown has not paid a nickel to anyone. Johnstown's pro rata liability, as it stands now, is zero, because the trial court found that the plaintiff would not be allowed to stand in the shoes of JLG to pursue JLG's claim. And that is what we need to focus on, JLG's claim. The trial court found that allowing this assignment would allow that claim to, and I'm quoting, loses its identity as a contribution claim. There is no citation in the trial court's finding as that. The trial court just said, allowing the plaintiff to pursue a contribution act, that action loses its identity. That's directly contrary to the law regarding assigned claims. Johnstown does not dispute that a contribution action is an assignable chosen action. An assigned claim, the law is clear on this, it's statutory, the assignee takes that claim subject to all defenses that existed at the time of notice of the assignment. There is nothing different about the claim if it's pursued by the plaintiff as assignee of JLG than it would be if the claim was pursued directly by JLG itself. Put simply, had this settlement been allowed and found in good faith, at the end of this case, when it was all over but the shouting, the only thing that would have been different on that assignment is the payee on the check as to Johnstown's reckoning for its pro rata liability. Is it to JLG directly, or is it to plaintiff as assignee of JLG? Nothing else about the claim is different. Johnstown has every right that it would have otherwise on the direct claim of JLG. And it's worth noting, and this is clear from the records, that there is no dispute, Johnstown does not dispute, the statute of limitations defenses were not valid as against the claim that JLG could have brought and did bring against Johnstown. That is, it is not disputed that JLG could have brought a contribution claim against Johnstown, because JLG did bring a contribution claim against Johnstown, which Johnstown answered, and during which the parties were at issue on the pleadings at the time that JLG and the plaintiff took their voluntary dismissals. At that point, I'd like to talk about procedural history leading to the voluntary dismissals and how it supports the finding of appellate jurisdiction in this court, something which Johnstown has argued in a number of different ways strenuously against. The records in the pleadings here are clear. The plaintiff and JLG went to the court and said, we've reached a conditional settlement, and the settlement is conditional on the court's good faith finding, because JLG didn't want to be a part of the litigation anymore. That's why they settled with the plaintiff, and that's why as part of that settlement, they said, we will assign to you our right to contribution, because we don't want to litigate this anymore. The parties go to the court, and the court says, for reasons that we've just addressed, the court finds that this is not in good faith. At that point, I, the plaintiff, go to the court and say, as the court noted, the court finds no significant guidance in the case law on this. We should have an appeal under 308A, certify the questions, the questions that are at issue here. And the court says, I'm going to deny that. I'm not going to allow that. So all that happens following that is JLG files its contribution claim against Johnstown. Parties are at issue, so that that claim is preserved and is of record. And then JLG and the plaintiff voluntarily dismiss their claims. In those motions, explicitly stating that the purpose for the voluntary dismissal was to end all claims in the trial court so that we could come here before Europe, so that we could pursue an appeal of the adverse rulings. And that was granted. The law is clear that voluntary dismissals can create final orders for the purposes of appellate jurisdiction. And as Johnstown concedes, those final orders draw into the appellate review every procedural step that led to those final orders. The procedural steps in this case could not be more direct and clear. At every step, it was stated in writing, and is of record before this court, exactly how that step related to the step before. The denial of motions for good faith finding was entered. And the immediate next filing was, judge, you forced us to litigate against each other, plaintiff and JLG, a case which we're trying to settle. May we please get a second opinion on your ruling? The judge said, no, I'm not going to allow you to do that. So what we were left with doing was the option of either litigating, the plaintiff litigates a party who it doesn't want to litigate against, the party has to defend against a claim that it wants to settle, or we end all proceedings in the trial court via voluntary dismissal, final order to create review here so that this matter can be reviewed. That is what the parties did. It's clear that that is permissible. It's clear that it's a final, appealable order which creates jurisdiction before this court. And that is how we are here today. The final issue that Johnstown has raised, which I believe doesn't warrant significant discussion, is the most recent motion to dismiss portions of the Appeal for Warrant of Jurisdiction on the argument that the plaintiff and JLG not refiling their actions in the circuit court while this matter is pending has now made this court's decision moot. I had trouble following it as well. But what Johnstown is arguing now is that this court lacks jurisdiction to reverse the trial court. That's the gist of the argument. What Johnstown is now arguing is, hypothetically, in the future, if the plaintiff were to refile against Johnstown, that action would be barred by the one-year provision in 1009. Hypothetically, if JLG were to refile against Johnstown, that provision, or that suit, would be barred by 1009. And for some reason, completely unexplained, those pending suits are necessary to create the empty vessel into which this court can return jurisdiction to the circuit court. As this court is no doubt aware, that is not the law. This court's jurisdiction does not rest on there being a pending circuit court matter between the same parties to which this court can return jurisdiction. This court's mandate returns jurisdiction to the circuit court. While the cases cited by Johnstown in that most recent motion dismissed do show that in certain circumstances, a plaintiff can refile an action in the circuit court while an appeal is pending between the same parties as the same subject matter. Entirely missing from any of the briefs, and entirely missing from Illinois law, is any requirement, any finding that the plaintiff must refile an action in the circuit court while an appeal is pending, if the one-year provision will expire during the pendency of the appeal. With that, I believe that concludes all the arguments that I've prepared. I think I spoke more quickly than I anticipated. So I'd welcome any questions that the bench may have. Thank you, Mr. Lewis. Mr. Cassidy, good afternoon. May it please the court, counsel. One of the things that kind of surprised me that Plaintiff's Art didn't argue the statute of limitations against the statute of limitations order against us that we received back in January 5, 2011. I got a bunch of arguments for that, but it appears that he agrees. But I'm not sure what the actual rulings. I'm failing to argue it. But I believe that the statute of limitations clearly was wrapped and passed. But that order wasn't whether or not the statute of limitations that we received back in January 5, 2011 was proper. That was just a request of discovery to go on a fishing exhibition to determine whether equitable tolling or fraudulent concealment could be determined. And of course, that's discretionary for the court. Any discovery issue is. And the court denied it and pointed out that there were a number of avenues that he could have taken to figure out that we were involved in this case, including filing on the day he received these interrogatories. The other thing to keep in mind, he wasn't criticizing us in any way as far as the statute of limitations. He was criticizing JLG not answering interrogatories promptly or on time, when in fact they did. I point that out in my brief that they actually were served on the day that they were due, just 28 days after they were served. So that's the statute of limitations question. I thought the criticism was under section 2621 of the code of ethics. They also raised that, Your Honor, which, again, was pointed at JLG. And what the argument was on that is that JLG, when they answered, should have filed an affidavit on section 6-201 identifying all component manufacturers. What's important, though, is 6-201 is an avenue to, in fact, it's a section of the rules that specifically says that it does not apply to a manufacturer. It only applies to retailers and distributors for identifying the manufacturer. In other words, to move product liability action upstream to the actual responsible party. That's what that affidavit is. Well, the plaintiff, through this argument, are now trying to reverse it, even though the statute is limited to non-manufacturers. Let's see it real quick here. What it says, Your Honor, in any product liability action based on any theory or doctrine commenced or maintained against a defendant or defendants other than the manufacturer, that party shall, upon answering or otherwise pleading, file an affidavit certifying the correct identity of the manufacturer. Well, in this case, part of the suit was JLG, the manufacturer. And he's arguing, the plaintiff, that they have an obligation, manufacturers have an obligation to identify every supplier of every product that ends up in a product. And the court, Judge Gilfillan, said it just simply doesn't apply. That's not a requirement under 6-2-1. In regards to the good faith aspect of this case, there are two important decisions that have been raised beyond the policies involved on an assignment. And the first one is that we raise is does this court even have jurisdiction to hear that particular argument? In the third position, it does not. And the reason is that, and counsel explained the procedure how it got here. And basically what he did was he used 3-01 of the appellate court rules as an end round for a 304A finding. And that was specifically criticized by the Supreme Court, 172 Illinois 2nd, which I cited in the footnote, saying that it would basically destroy the whole purpose of an interlocutory appeal. In other words, if all it took was a plaintiff to dismiss a case to take an interlocutory appeal, there would be no reason for that. Supreme Court criticized it. That's exactly what was done in this particular case. In other words, once the denial, again, this is an abuse of discretion standard, by the way, Judge Gilfillan's order. And Judge Gilfillan's order lists six separate reasons why what was done here violated the contribution act and why he found it was in his discretion, which is the standard, not in good faith. And those six reasons are set forth clearly in this order, which is a part of this appeal. But the reason the court doesn't have jurisdiction is because there has to be a final order from which this appeal arises under 3-1. And the plaintiff is arguing this is a voluntary dismissal. Well, the Supreme Court in Cale versus John Deere made clear, and a number of courts have found that we've said in our brief, that when a plaintiff moves for voluntary dismissal, it is not a final, appealable order to the plaintiff. It never is. It can't be. A defendant can appeal from that order as a final order, but a plaintiff can't. Well, in this case, the plaintiff is appealing from that order. And then he claims that the good faith denial is a procedural step from that order. But he can't get around the Cale rule. In other words, you never get jurisdiction from a plaintiff's appeal from his own voluntary dismissal. And we discuss that a great deal in our brief. So it's our opinion that the court lacks jurisdiction because there is no final order from which this court receives jurisdiction that a plaintiff can appeal from. The next step is that the order has to, of course, the plaintiff doesn't deny that this is a non-appealable interlocutory order, similar to a denial of a summary judgment. This is a denial of a good faith finding, which is discretionary. And so they have to find a final order. It has to be a procedural step for this court to consider it from a final order. Well, the denial of a good faith finding is not a procedural step to a voluntary dismissal because that's not the type of connection that courts talk about. For instance, other cases like the Sattelsheim case specifically pointed out the denial of a summary judgment action is not a procedural step leading to the final voluntary dismissal. The difference in Sattelsheim, by the way, is that the defendant appealed that and not the plaintiff. So it got around the Cale problem. So I do not believe this court has jurisdiction to even consider this. We've raised that issue. The second issue, Your Honor, that we've raised, even before we get to the substance of this, is it is moot because we have no objection to the settlement. JLG agreed to pay $190,000. There's a complaint of approximately, I think, $78,000. The plaintiff's back to work. He had a compression fracture. Everything appears to be in good shape from the plaintiff. And the plaintiff wanted, JLG wanted to get out of this case. They had problems with this particular pin slipping out, which we didn't even manufacture. And in fact, there were notices. And they wanted to settle this case. There were other lawsuits out there similar to this. But at any rate, what happened when the voluntary dismissal was made on February 5th, I believe, 2013 was the order for voluntary dismissal, they have one year to refile. And this is why it's moot. Let's assume the court, we don't care about the settlement. We only care about assignment of the contribution claim against us back to the plaintiff and for him to pursue it against us. Well, he can never file that. One year has expired after the voluntary dismissal. Let's assume we go back to the circuit court. He does get the assignment. The court orders the assignment's okay. And he files the contribution, refiles it. It's a new action. That's Dubina case. It's clearly a new action. It's not as continued as the old action. That will be filed over a year after the voluntary dismissal. That's why we argue that we filed this after a year, saying he can't refile an action against us. There is no assignment that can be pursued. And I don't understand why he has difficulty in understanding this, but we can raise that. And obviously we will. And the plaintiff, yes. No one can file a contribution claim against us now. So this whole issue seems to be moot. Number two, we also raised 13-204-C in the pillow civil procedure, which is another statute of limitations. And that's the contribution statute of limitation. And what this says is that it talks about A and B and when they can file the cause of action, but it's usually within two years of service, as the court knows. But it says that a plaintiff can, I'm sorry, a defendant can only bring a contribution action if the underlying claim is brought within the time that the plaintiff could have sued us. Okay? Let me state it another way. In other words, if one plaintiff refiles, it's a new cause of action. That's beyond the time they could sue us. So under 204-C, there can be no contribution claim against us because if the plaintiff can't sue us directly, a defendant can't sue us. That's what 204-C says. So it's moot. There is no way that a contribution claim can be brought against us. And that's our argument on mootness here. There's no tolling because of the appeal? No, and I cite the cases to that effect in my, and certainly that would only apply to the first argument on one year. It doesn't apply to the contribution statute of limitations. In other words, it's clear that it's a new cause of action. It's not a continuously old cause of action when they refile within a year. That's why two can be pending at the same time. Why they could have refiled within a year because they're a separate cause of action. And that's what the Dubena court stated. But if the plaintiff can't sue us, then JLG can't sue us. And the plaintiff clearly cannot sue us. In fact, we got summary judgment. Now the court may be asking, why could JLG sue us before? Well, it's because when plaintiff sued JLG originally, plaintiff could have sued us, but didn't. They only sued JLG and the owner of the Lyft, which was a rental company, and didn't sue us until after the statute expired. But because plaintiff could have sued us when he sued the defendant, that defendant could sue us. But now they can't. When the plaintiff refiles, they can't sue us. And therefore, JLG, I'm sorry, JLG has no contribution claim against us. Okay. Finally, there are a number of issues that Judge Gilfillan goes into in his order, why this violates the policies of the Contribution Act. The most important in all the cases cited by the plaintiff in this case is, none of those cases are a case where the defendant, I'm sorry, where an assignment of a claim occurred after a final judgment had been entered against that defendant. Okay, thank you. In other words, we had obtained summary judgment. Plaintiff could not sue us. And then they settled with JLG, but created a cause of action against us by demanding a settlement against us. So there was no claim against us against the plaintiff. He negotiated a claim against us when that existed. That doesn't happen in any other case that is cited. So that's 2E of the Act. What 2E of the Act basically says is that the plaintiff has to dismiss all claims against us in order to bring a defendant to bring a contribution claim against us. Well, not only can he not dismiss us under 2E, because we were already terminated by court order, but he created one. He did exactly the opposite of what the Act allows. He created a cause of action in favor of the plaintiff instead of terminating it as required by 2E. Number two, JLG has to pay more than their pro rata share in order to preserve their contribution. They have no contribution if they don't pay more than pro rata share. Counsel said on oral argument that JLG just wanted to pay their share and get out of this thing. And that's what they did in this case. They never even filed a contribution claim against us until after this assignment thing was, they just wanted to pay the 190 and get out. But I point out on this pro rata share part of the argument that they made judicial admissions, both the plaintiff and JLG, to the court that JLG was only paying for its share of the 190,000 representatives' share and not my share, too, so that they could sue us for contribution. And I cite those in the brief, those admissions were JLG, and we have judicial admissions to this effect, that JLG admitted that they were only paying the pro rata share. So that violates the Act that there's no contribution because they have to pay more than their, and that's the Clottie case, which is distinguishable from the West Coast. Clottie said that it violated the Act because there's no proof the defendant paid more than his pro rata share. Thank you. Any questions? Any questions? Thank you, Mr. Cassidy. Mr. Willis, any rebuttal? Thank you, Your Honor. I think one point is worth highlighting on rebuttal is that counsel for Johnstown argued that Section 2E, the Contribution Act, requires the plaintiff to dismiss their claim against the non-settling defendant in order to preserve contribution. Not what statute says. It says that the settlement must extinguish the liability of the party against whom contribution will be sought post-settlement. Dismiss, if the statute actually read, as Johnstown has argued to you that it does, that would imply that there is a claim to be dismissed. What it says is extinguish, and this was the word that tripped up the trial court and I think led to the result here, which is it's very odd. It's not used elsewhere in the statute, and so it's kind of open to interpretation, the trial court found. But in interpreting that word, the trial court completely disregarded all of the other cases which guide what is and is not good faith on Contribution Act settlement. If there's a fire in one's kitchen and one reaches for the fire extinguisher, if that fire is extinguished, it's not coming back. That's extinguished. If the fire is smoldering and it might come back, that's not extinguished. That smoldering fire is what we had here. Johnstown received summary judgment and neither sought nor received any 304A finding. Because they knew they were still gonna be in the case because they knew that JLG was just going to sue them for contribution. There was no 304A finding as to that motion for summary judgment. It was not enforceable. Directly under the terms of Rule 304, that is not an enforceable judgment. However, they would say, despite the fact that that's an interlocutory order, can't be appealed, can be revised at any time prior to final judgment, that any liability they had was extinguished. Your honors, that fire is still smoldering. Until the settlement is signed, until John Wiesahan says, I sign off on my right to sue Johnstown, that liability is there. And when John Wiesahan does that, when the plaintiff does that, that liability is extinguished. It happened in the same settlement that JLG entered into with the plaintiff and that is why that contribution right is preserved. Section 2E of the Contribution Act, make no mistake, does not require the plaintiff to dismiss its claim. It requires the plaintiff to extinguish the claim. That's what happened here. That's what the trial judge misunderstood and that's why the trial judge's motion for good faith finding was an error. Briefly, Counselor for Johnstown made a number of arguments about whether or not the pro rata share of Johnstown was or was not included in the settlement with JLG. That is for the jury to decide. That is what we were prevented from proceeding with at trial, the contribution claim of Johnstown. Johnstown has made arguments in the briefs that the confidentiality that was negotiated as part of the assignment is really of no value. It's a factual finding. It's a factual finding for the court. If Johnstown wishes to make those arguments, they may make those to the jurors of Tazewell County. That is not what happened. What happened was the right to pursue a valid assignable chosen in action was taken away in contradiction of the law of Illinois interpreting the Contribution Act. Thank you very much. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a formal change.